We have six cases on the docket this morning and we will take a break for about 10 minutes between the third and fourth cases. The first case is Chavez- Govea v. Bondi and this is 2495-51 and we'll hear from Ms. Wong. Good morning, Your Honors, and may it please the court. My name is Tiffany Wong and I represent the petitioner Simone Chavez-Govea. I would like to reserve three minutes for rebuttal today. Mr. Chavez-Govea's request of this court is simple, to give him the opportunity to apply for protection from persecution, torture, and likely death in Mexico. This court should reverse and remand the BIA's decision with instructions to remand to the immigration judge for the following five reasons. First, the immigration judge set an unreasonable deadline of 15 days for Mr. Chavez-Govea, a man who appeared alone in a detention center struggling to keep up with the simultaneous English- Spanish interpretation during his first hearing, and he had 15 days to fill out a 12-page English language application that forms the basis of whether he will be deported to a country where he fears torture and death. Second, despite the unreasonable deadline, Mr. Chavez-Govea worked diligently to try to complete his application and showed good cause for continuance, which was unreasonably denied. Third, under the board's own precedent and matter of RCR, Mr. Chavez-Govea did not abandon his claim for relief. Fourth, Mr. Chavez-Govea was denied a full and fair hearing. In addition to not being given a reasonable time to submit his I-589 application, he was denied a right to counsel and the immigration judge failed to fully develop the record, even though Mr. Chavez-Govea was a pro se detained individual with limited English proficiency. And finally, fifth, Mr. Chavez-Govea's motion to reopen was not moot. The question of whether Mr. Chavez-Govea had a reasonable time to submit his application was the central impetus for the government's motion to remand from the Tenth Circuit two years ago. However, in the BIA's 2024 decision, it once again abused its discretion by putting the burden on Mr. Chavez-Govea, saying that he didn't explain his efforts to complete his application rather than recognizing his statutory right to a reasonable opportunity to present evidence. We submitted a brief on remand again two years ago explaining all the reasons why the deadline was unreasonable, yet the BIA failed to engage in any of those arguments. As a pro se detained applicant with limited English proficiency, Mr. Chavez-Govea needed to translate the application first into Spanish to understand the questions, then try to formulate answers as to why he feared torture and death for the immigration judge to understand why he could not return to Mexico. Ms. Wong, why would he need to do that? It was being simultaneously interpreted into Spanish. Your Honor, this is referring to the 589 application. This is the 15 days, yes, that he had during, after he was given this application. This application is completely in English. It's a 12-page application. The Supreme Court itself, in Mr. Chavez v. Garland, recognized the really onerous nature of filling out this application that determines life or death. Okay, and that's a very good point. Well taken. The immigration judge offered to the petitioner to walk through the application and he said, no, I don't need to do that. I don't need you to do that. Your Honor, respectfully, I don't think the immigration judge offered to walk through each question of the application. But isn't that exactly what he said? If you want, I can walk you through the application and he said, as I recall, no, I just want to talk to the deportation officer. Am I mistaken about that? My understanding, Your Honor, is that it was the immigration judge offered to, if he wants to proceed with the application, I'm looking here in the record and on page 436 before, I guess, line 18, the judge is asking, do you want to actually be removed or would you rather proceed with the application? Then Mr. Chavez-Gobez says, I would like to talk to my deportation officer by saying not, the question I guess the immigration judge was asking was not, would you like me to walk through the application, but rather, would you like me to proceed right now with determining whether or not you should be removed to Mexico or do you want to continue to have even the opportunity to fill out this application? Mr. Chavez-Gobez, again, this is him first time appearing in front of this court. He's been detained. He's not exactly sure what he wants to do. He's not sure what his options are. And he says, I would like to talk to my deportation officer. He then has those 15 days to decide whether or not he wants to fill out the application. It doesn't mean he knows anything exactly of what the application says beyond this is the application to explain why you fear returning to Mexico. So then from there, he is tasked with translating this application, formulating his responses, responding in Spanish, and then once again, translating from Spanish to English to put on this 12 page application. Again, these questions that are asking, you know, why do you fear returning to Mexico? You have to explain, you know, what, what are these horrible things that you fear? And he has to be able to formulate this in a very concise way for the immigration judge to understand. Are you presenting it accurately and fairly, which is to say this case seems unusual in that the IJ asked, why did you not fill out the application I gave you? And the answer isn't, I don't understand the language. I've been in the U.S. for 20 years. I have six children with an American citizen in the U.S., but I didn't understand the language and I'm seeking help. And so I just need a little bit more time. That's not what he says. He says someone from Las Americas was helping me, but the truth is that I didn't really pay that much attention. I'm sorry, which sounds like wasn't diligent. How can you say that he was diligent? Yes, Your Honor, in in his appeal at the very beginning, back in again, 2021, he mentions that when he says I wasn't paying that much attention, what he was saying was that he was he was confused. He had what he says. You're characterizing something other than what the language was. And elsewhere, he says, I thought that I'd heard from other detainees that you really didn't have to do it till the third hearing. Again, that reeks of lack of diligence rather than confusion or inability. What if what if it is a lack of diligence? Is that the end? If if he did not diligently, truly did not diligently pursue this this case, Your Honor, and did not have good cause for a continuance, though, so if I if I read the language as it's written, maybe differently than you're characterizing it with more information behind that, then he loses. Most likely, yes, Your Honor, I think there's there's the question, I think the first point is that the 15 day deadline in general was just unreasonable for someone who who didn't speak Spanish or who didn't speak English, who needed more time to just in general to fill out this is that accurate, though, is it accurate to say didn't speak English? What he said is Spanish was his preferred language. Your Honor, Mr. Mr. Chavez Govea, he he understands a little bit of English through the construction sites that he worked on. But to be honest, if you're, I mean, trying to explain your the fear and the torture that you're going to face in Mexico, that feels explained it pretty well, said that his father in law had been involved with the cartel and his conviction had been overturned. And so the cartel thought he might be an informant given full opportunity. The I.J. was soliciting information rather than cutting him off from my reading. And so whether Spanish is his primary language after 20 years in the United States or not, he got his story out. And the I.J. said that doesn't sound like a real winner to me that as you've described it. Your Honor, I would like to clarify and just to confirm everything that's in the transcript. This was translated. Mr. Chavez Govea was answering in Spanish and in the transcript. Right. It was it's now in English. But when he was explaining, this is not because he understood English again. If he had time to for the application itself, I think the central question in this case is whether he had the opportunity to fill out this application, to really think through and explain all the reasons why he feared returning to Mexico. And he did. He was able to answer some of the questions that the immigration judge had. I will point you to your honor to one piece of the transcript. Let me confirm exactly where in on the on page 440, the immigration judge is asking him questions. The immigration judge literally says, I don't understand. And instead of giving Mr. Chavez Govea the ability to respond to that question, he then moves on. The immigration judge moves on to a completely different topic. While the immigration judge did ask questions, I think it's it's hard to say that he fully developed the record when he's telling Mr. Chavez Govea that he doesn't understand something, but doesn't give Mr. Chavez Govea the opportunity to then respond. And in regards to, again, his diligence, Mr. Mr. Chavez Govea, he while he mentions, you know, at first that maybe he wasn't paying that much attention, the respondents like to characterize that as saying they add in their brief, wasn't paying that much attention to my application. That's not what he says. He says I wasn't paying that much attention. And by that, as he explains in his remand brief, he means that he was struggling to understand the simultaneous interpretation. And then actually also at the very end of the hearing, he again apologizes to the judge. I'm sorry, I didn't quite understand what I needed to do in this in his first hearing. And so in that case, he he really was trying his best. And while he was not able to complete his application fully, he had sought out the assistance of a legal services provider. And then he asked for just a little more time, once again, turning to that question of whether the immigration judge was was was fully considering the record and fully developing it. The immigration judge doesn't ask any questions about how much time he needs or what, you know, just what else he needed to do in order to complete his application. Instead, he says you he starts to ask, I told you the deadline was this day. Right. What's your plan? He doesn't actually even give Mr. Chavez Govea a an opportunity to to respond with what his plan is and instead says, well, you missed the deadline. I'm going to ask you a couple of questions for to figure out if I think you have a I guess presumably to determine whether or not that that warrants a continuance rather than considering all the other factors about a continuance, like how many continuances had been requested before, which is this was the first one. How much time has passed? It had been 15 days if we're looking at judicial efficiency. Counsel, can I ask you about the right to counsel? So you argue that he was denied his right to counsel, but he elected to proceed pro se at his at the initial calendar, the master calendar hearing. And then I don't see anywhere in the record where he expressed a change of heart, so to speak, about his election to pro se. So how is it that he was denied his right when he was notified of his right to counsel, how he could obtain counsel? And he never wavered from the decision that he made. Your Honor, to start, I think when the immigration judge, he said that you have a right to right to find counsel and then goes on for quite a while explaining what an individual will do if they decide to proceed pro se. And then at the very end asks, so what would you like to do? The immigration judge doesn't explain what the next steps would be for someone who did find counsel. So in that in that sense, Mr. Chavez-Govea only understands you can proceed with your case if you proceed pro se. And so in that sense, his his waiver of counsel was not fully informed. But that's not what he says. I mean, he doesn't explain at the immigration judge. We have a lot of cases where we've reviewed records where someone appearing for an immigration judge says, well, I'd like to find a lawyer and then they're afforded time to do that. And this case just seems categorically different to me. Your Honor, I think it is different than a lot of cases where an individual expressly says that they're looking for counsel. Again, at first, his waiver of counsel, he does I we are acknowledging that he does say that he would like to proceed pro se at first, but also acknowledging that he was he was given information about how to not or how only to proceed pro se. And that seems to make sense. And then and then coming back in the second hearing, then he explicitly says that he's working with a legal services provider. This is a this is a well-known legal services provider in the area or in the detention center where he's detained, where the immigration judge is working. And instead of again, instead of developing the record, asking, oh, what's your relationship? You know, what's your relationship with this legal services provider? What's going on? The immigration just says, you missed the deadline. What's your plan? Why would an immigration judge ask that? You know, this is not under the Criminal Justice Act. You don't have a right to have the government pay for a lawyer. You don't have a right to a lawyer. All the right to counsel means in this context, as I understand it, is that if you show up with a legal representative, a paralegal, a lawyer, that the immigration judge can't say, no, I'm not going to hear from the legal representative. So at the master calendar, the staff distributes this list of organizations. And I'm going to give you some time for a vote, but it gives a list. I don't know if the record doesn't show whether Las Americas is on that list. He, whether he knows, understands what the immigration judge said or not, he clearly understands that he has the ability, the right to go to Las Americas, a legal representative, and he does it. So what could the immigration judge have done further, assuming that he did have a change of heart? What's an immigration judge to do at that point? Say, I'm going to call up Las Americas and, you know, get them on the stick, or I'm going to call a lawyer and make them take the case for free? There's really nothing left to do. Your Honor, I think regarding the statutory and regulatory right to representation of counsel, again, not paid for by the government, but of an individual's choice, there is a right to be able to choose a lawyer and be able to have them at the hearing. And I think, you know, to say Mr. Chavez-Govea did find Las Americas and then say, I'm working with them. I think at the very least, the judge could have said, OK, what's that relationship? Just to confirm that there wasn't any issues with, like, why did Mr. Chavez-Govea bring up that he was working with Las Americas and then proceed with that? I mean, as we see on appeal, immediately after his continuance is denied and he's not able to proceed with his case, he retains a lawyer from Las Americas and then appeals his case. Well, but only because, to follow up on Judge Phillips' questions, only because he acknowledges that he never told Las Americas that he had a 15-day deadline. Presumably because of the interchange of dialogue that you had with Judge Phillips, that he wasn't paying enough attention in some fashion. Yes, that's correct. That's right, because he was struggling. He wanted to proceed with his case, but just needed a little bit more time. I think the central fact of the matter is that all he asked for was a little bit more time to complete his application, and the BIA has decided that it was OK for him to not have any more time and that it was OK. It would be fine if he had said, it'd be a different case if he had said, 15 days, Judge, I looked at the application, I'm confused by it, I have people helping me, I need a little more time. That would be a totally different case than saying, the truth is, I didn't really pay much attention. And then later, very soon after that, the IJ says, if you're so afraid to go back to Mexico, why wouldn't you have taken the time to fill out an application? No response. He's given an opportunity to talk to the IJ about needing time and never did. Your Honor, it's, first, I would ask you to put yourself in someone's shoes who has been detained. They're not, again, not totally sure what's going on. They've had 15 days to ask around with other people who are also detained, try to understand, try to start to fill out this application. And then when he shows up at his next court hearing to ask for a little bit more time and then in front of this judge, who is this power of authority, who is then asking these questions, why didn't you fill out your application? You had some, like you had this time. Why didn't you do it? I think understandably, he was trying to, you know, he responded in the best way that he could. And then when he had a little bit, when he did have a little bit more time, when, you know, he was able to hire at Las Americas to represent him, he presented, you know, all these full reasons as to why, you know, why he wasn't able to fill out this application in 15 days, what he was attempting to do when he asked for this continuance and everything from there. And if there are no further questions. OK, thank you. Lisa, let's let's give Ms. Wong a minute and a half for rebuttal. Thank you. May it please the court, Lisa S. Murcia of the Office of Immigration Litigation for the respondent. The court should deny the petition for review. The board did not abuse its discretion in affirming the immigration judge's determination that Mr. Chavez Govia had waived and abandoned his opportunity to file an application for protection. The immigration judge reasonably set a filing deadline for submission of the application. And Mr. Chavez Govia's only stated reasons in the record for not filing his application by the deadline were that he was not paying that much attention to his application. Similarly, the board did not abuse its discretion in affirming the immigration judge's denial of Chavez Govia's request for continuance. I'm sorry, I don't know what I'm causing this to, feedback. My apologies. Lisa, should she move a little further from it or? Yeah. Yeah. Sorry about that. Likewise, the board did not abuse its discretion in affirming the immigration judge's denial of the request for continuance to file his application for relief and protection. Mr. Chavez Govia provided insufficient explanation for his ignoring the immigration judge's instructions on timely filing his application and his post hoc explanations for his motion afterwards and his motion on his appeal and his motion to remand on appeal to the board are not persuasive. And moreover, they're not supported by the record. Counsel, if we're going to have a rule come out of this case, and we probably are, why would it be a bad rule to say if someone who comes in and needs a Spanish interpreter answers the IJ that question, why have you not given me your completed form? And at least in a one sentence answer says someone from Las Americas was helping me, which is a change in circumstance from the first time the person was in front of the IJ. Why isn't that enough for the IJ to have to say things have changed a little bit? Tell me more. There are a lot of presumptions. When did they start helping you? Did they start helping you yesterday? Have you completed one third of the form? Can you have it done in a week? A lot riding on it. Why would that be an unreasonable rule? Well, the immigration judge only has what's being presented to him. And he asked what I would say is the appropriate questions in the transcript here. He says, why didn't you, why didn't you file? Essentially, he asked that question to the petitioner here and his response does reference Las Americas. But he immediately goes on and he says, honestly, I just wasn't really paying attention. And he doesn't expand on that. He doesn't he doesn't say anything further that would make the immigration judge inquire further. The petitioner, the petitioner's later pleadings put a lot of speculation into his mindset that he does a lot of post hoc explanations as to what exactly happened there. And but we only have what was before the immigration judge at the time. And he's and the immigration judge says, OK, I gave you the warning beforehand. In the previous proceeding, I specifically said, and he does specifically say, I'm setting a deadline. If you do not file the application by that deadline, you risk having it being being predetermined, like not going forward with it. Counsel, can't we also look at the record and the immigration judge's comments immediately after Mr. Chavez-Govea asked for more time? One of the first responses, the immigration judge, he says, well, you were convicted of transporting illegal aliens, right? And he says, so why didn't you fill out the application I gave you? And that's when Mr. Chavez-Govea says someone from Los Americas is helping me out. And that's where he says I wasn't paying attention. I'm sorry. But then the judge again leaps to the conviction as if he has predetermined the merits of an application that hasn't been submitted, because he's saying you're not going to be eligible for cancellation. You're not going to be eligible for asylum. So in other words, what's the point of an application anyway? Why couldn't we read the record that way? Well, first of all, I refer to the initial discussion and the first hearing on August 31st because the immigration at that time, immigration judge at that time was trying to determine like what applications would you be eligible for? So he tells the petitioner at that time, I'm going to go through this with you a little bit. I'm going to discuss, are you eligible for cancellation of removal? Are any of your are your parents or grandparents U.S. citizens where you could claim derivative citizenship? And he does discuss a little bit in that initial proceeding, like you have a criminal conviction here, which is likely going to bar you from asylum. So, I mean, to be honest, we only have what's there. But the immigration judge might be trying to discern. I possibly gave you the wrong impression at the beginning that, you know, I said that you probably weren't going to be eligible for asylum because you're a criminal conviction. Let me make sure that I understand what you're saying here, that you are eligible, whether or not you are eligible for withholding of removal and convention against torture. And he does go through like questioning him. What kind of reliefs is it possible that we would be considering if I was going to continue the case or if I was looking at good cause for missing the deadline? So the immigration judge is giving him the process that he's due here, trying to figure out what is available to him and if good cause is being shown, either for missing the deadline, which he didn't really say anything that would say this is a good reason, a good cause for missing this deadline or for giving a continuance. Which in that respect, the petitioner's arguments in all three instances are pretty much the same argument. In every single instance, they are giving post hoc explanations for what actually happened before the immigration judge to use a well-worn face. It's a little bit like, you know, Monday, I believe it's called Monday morning quarterbacking. Well, Ms. Wong's explanation for that is because the immigration judge didn't adequately inquire. This is a non-adversarial proceeding. When the non-citizen says, you know, I didn't pay enough attention, he also says, does he not, that I had trouble understanding. And then Ms. Wong's argument is that the immigration judge didn't inquire further. And so isn't that a good reason that there's a post hoc explanation, is that he never had the opportunity because the immigration judge didn't adequately develop the record on why a 15 day period would be sufficient? Well, the immigration judge, as we were stating previously, the immigration judge only had what was in front of them. And based on the response, the response was, but the truth is that I didn't really pay much attention. The immigration judge went with what was said. Doesn't he also say after that, that I had trouble understanding? There, she, with all due respect to petitioner's characterization of the record there. Where he says, I don't understand, he says, Mr. Chavez-Guevara says, the truth is that I didn't really pay much attention. I'm sorry. The immigration judge says back, so here's the kind of issue we have. I'm going to go through some of your reliefs. And then he says, well, Mr. Chavez-Guevara responds, well, my life is in danger, definitely, because my father in law, which is my wife's father, he goes through some of his claim. The immigration judge then responds, sir, I don't understand. Have you ever been harmed in Mexico? So he's not going back to what was considered an adequate response for why didn't you fill out the application. He's trying to inquire more when he says, sir, I don't understand about the possible reliefs, excuse me, possible applications for relief or protection that the petitioner is possibly eligible for. Let me ask you an unrelated question, just a hypothetical. Let's say for your brief, you request a 15-day extension, you have a 15-day period to respond to the petitioner's opening brief and you ask in the 15 days comes and goes and you ask for additional time. The opposing counsel doesn't object and we say, no, you had 15 days. Would that be an abuse of discretion? I don't remember seeing any district judge, magistrate judge, bankruptcy judge, circuit judge ever denying, without any opposition, an extension of a 15-day deadline when there's really no prejudice to anybody. Your Honor, why isn't that just, you know, even if he was a lawyer, why wouldn't that be an abuse of discretion? Well, Your Honor, this is why the regulation says that under ACFR 1003.29, that the immigration judge can grant a continuance for good cause shown. So the petitioner has to present something that presents good cause and that's the issue here, that good cause wasn't shown. Are we on untrodden ground there? Are there any cases that would point one way or the other where a petitioner has said something to this effect, someone from Las Americas was helping me out, which is a change from the original hearing, that that's enough to require more of an inquiry? Are we just our own deal here? Any helpful authority? Your Honor, I would have to respond. I think what we're, I'm so sorry. It's not your fault. I keep on getting too close to it. It's all right. But, Your Honor, the question of whether or not the petitioner had the opportunity for counsel here is in different aspects of this case. I'm not asking about counsel. I'm asking about the continuance. Essentially, that's what I'm trying to respond to. I'm sorry, in some ways, the petitioner brings up joy for the continuance when she says, like, good cause shown. The idea that Mr. Chavez Govia was somehow restricted from counsel, but there's no evidence in the record that he'd retained counsel, that counsel was, that he was seeking counsel. He doesn't say, I need more time to seek counsel, which we see in other cases. In other cases, petitioners say, I need more time to consult with an attorney. I need to, I need to, I need to consult further with someone. He says in the beginning, in the first, I mean, may not be an attorney, but in the first proceeding, he says, I need to talk to my deportation officer. He certainly knows that he's certainly presenting. He was presented with a list of counsel providers. He says, I want to represent myself. When we go to the second proceeding, he never says, I need more time to look for counsel. And there's no evidence in the record that he'd retained counsel. Well, counsel, the petitioner's first argument is the 15 day deadline was just unreasonable from the outset. And then Judge Phillips is asking, well, at the point where 15 days has elapsed, are there any cases that look at that type of deadline and this continuance request that we can look to for guidance? But on the first question about 15 days, other than the regulation that allows the immigration judge to set deadlines, is there any case law that discusses and can give guidance to us as to whether or not that was just unreasonable from the outset? I do have to say, I didn't say any case law in my brief. I would refer one thing that wasn't cited in my brief, but I would refer to here, and I can certainly 28-J afterwards, is the immigration court manual that is a practice manual from 2019, which was around this time, which sets out the timing of admissions and the filing deadlines that depend on the stage of proceeding and whether the alien is detained. They do talk about master calendar hearings, individual calendar hearings, and they do talk about 15 days. That's sort of a standard at that point. When talking about the filing days, they say when a filing is submitted at least 15 days prior to a master calendar hearing, the response must be within 10 days after the original filing. For individual calendar hearings, they say for non-detained aliens. For individual calendar hearings involving non-detained aliens, filing must be submitted at least 15 days in advance of the hearing. For detained aliens, which Mr. Chavez-Gaviria was at the time, he says for individual calendar hearings involving detained aliens, filing deadlines are as specified by the immigration court. So, again, going back to what the record here, though, is, here, the immigration court sets a deadline and the petitioner doesn't come back and say, I need more time. I need more, that this wasn't a reasonable amount of time.  and my apologies to the court and petitioner, I didn't cite this, but I certainly am contemplating what is a reasonable amount of time. And as the board says here, the immigration court set a deadline. You need to finish up. You're about 35 seconds over time. Oh, I'm sorry. That's okay, but you go ahead and finish your thought. Essentially, the court should deny the petition for review here because the post hoc explanations provided by the petitioner is not reflected in the record, either for the question of the deadline, the continuance, or to be frank, in the due process, the allegations which repeat the explanations that the petitioner provided were both a good cause for continuance and the deadline. Thank you. Okay, we'll hear from the petitioner. I make this court two quick things. First, regarding filing deadlines, while an immigration judge has discretion to set these filing deadlines, it doesn't abrogate a respondent's due process rights. Again, making sure that a respondent has enough time to submit evidence to the court is very important when determining what a reasonable filing deadline is. But it's not a reasonable time to get it done while acting laxadaisically. That is correct, Your Honor. It's not while acting laxadaisically. I don't think Mr. Chavez-Govea was acting laxadaisically. But the truth is that I didn't really pay that much attention. I'm sorry. That is correct, Your Honor. He did mention, he did say that at the same time he said that he was working with someone. He, while he may not have said it in the best way on that day, he mentioned, again, that he's working with a legal services provider and that what he really meant was that he was confused. And I understand that he didn't say exactly those words. But again, when looking at the situation that he was in, you know, mentioning when he shows up by himself 15 days after his very first court hearing and says, I need a little more time. I'm working with this legal services provider. Sorry, I was a little confused. I think that, you know, both provides, that both shows that the immigration judge should have, you know, asked a few more questions and that should have, and he should have granted a continuance. Also, if I may. Is there ever a time when the IJ is not required to ask those additional questions? In other words, if the detainee comes in and says, well, yes, we had a checkers tournament and I ended up in the championship. It used up all my time, but I really do care about this and I want to get it done on the next one or the one after that. Does the immigration judge at that point have to say, well, tell me about this checkers tournament? Or did you talk with anyone at Los Americas? Have you set up in a meeting with them? At some point when someone says, I just didn't care enough to do it, is that the end? The IJ does not abuse discretion by saying, okay, I'll take you at your word. Your Honor, I think that is a good example of when the questions do not need to be asked. This person gave a full explanation of why they did not complete the application and they also said nothing about, you know, this, you're in your hypothetical here. The judge would have asked, had to ask affirmatively about a legal services provider that the applicant never even mentioned. Instead in this case, the applicant, Mr. Chavez-Gobez said, I need a little bit more time. I'm working with this legal services provider. Where did he say that? He, at the, this is on page... Which, which hearing are you talking about? This is the second hearing. This is the second hearing, Mr., the judge asked, are you attending to a file, an application, or what's your plan? Mr. Chavez says to request a little bit more time in response to what's your plan. And then after, and then the next question is, you know, at our last hearing I gave you an application. Is that right? Yes. You were convicted for transporting illegal aliens. Yes. And then why did you not fill out the application I gave you? We, in this case, you know, Mr. Chavez-Gobez asked for a little more time. And then, you know, went through a couple questions unrelated to that, specifically, and then told the immigration judge that he's working with a legal services provider. And I see I've gone way over time, so thank you. Thank you. Very well presented by both sides. We appreciate your zealous advocacy and your very effective advocacy, and this matter will be submitted.